# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| TERRI CRUTCHFIELD, | ) |
| Plaintiff, | ) |
| vs. | ) Case No: 1:13-cv-01028-STA-dkv |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

## ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

Plaintiff Terri Crutchfield filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("Act"). Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on April 19, 2012. On May 24, 2012, the ALJ denied the claim. The Appeals Council subsequently denied the request for review. Thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing."[1] The court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on August 21, 1957. She has a GED and past relevant work as a kitchen manager. Plaintiff alleges that she has been unable to work since August 21, 2010, due to irritable bowel syndrome, celiac disease, frequent rashes and sores on her body, hypertension, diabetes with neuropathy, back pain, depression, abdominal pain, gallbladder removal, right

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

ankle surgery with hardware, chronic recurrent anal fissures, and hemorrhoids. Plaintiff initially alleged disability beginning on July 1, 2010, but, at the administrative hearing, she amended her onset date to August 21, 2010.

The ALJ made the following findings: (1) Plaintiff met the insured status requirements through December 31, 2015; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairments: diabetes mellitus, peripheral neuropathy, and adjustment disorder; but she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform medium work except that she can only sit, stand, and walk in combination for a total of eight hours in a regular workday and must have a sit/stand option; she cannot climb ladders and scaffolds; she can frequently perform the following activities: climbing stairs and ramps, handling, fingering, feeling, reaching overhead, operating foot controls, stooping, and crouching; she can occasionally perform the following activities: balancing, kneeling, crawling, and being exposed to humidity, wetness, vibration, and temperature extremes; she must avoid being exposed to hazards such as frequent exposure to moving machinery and driving; she must completely avoid irritating inhalants; she can understand, remember, and carry out short, simple instructions only and can make judgments on simple work-related decisions; (5) Plaintiff is unable to perform her past relevant work; (6) Plaintiff was an individual closing approaching advanced age with a high school education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled whether or not he has transferable job skills; (8) considering Plaintiff's age,

education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[8]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[9] The claimant bears the ultimate burden of establishing an entitlement to benefits.[10] The initial burden of going forward is on the claimant to show that she is disabled from engaging in her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[11]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he or she has done in the past will not be found to be disabled.

---

[8] R. 12-20.

[9] 42 U.S.C. § 423(d)(1).

[10] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[11] *Id.*

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[12]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[13] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform her past relevant work, there is a substantial number of jobs that exist in the national economy that she can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. She specifically argues that the ALJ erred by not properly evaluating the medical evidence in the record, especially the opinion on her treating physician; not properly assessing her credibility; and failing to present an accurate hypothetical to the vocational expert based on a proper residual capacity finding. Plaintiff's arguments are not persuasive.

Weighing of Medical Evidence

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[14] The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other

---

[12] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[13] 20 C.F.R. § 404.1520(a).

[14] 20 C.F.R. § 404.1527(c)(2).

evidence, (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."[15]

If an ALJ decides that the opinion of a treating source should not be given controlling weight, the ALJ must take certain factors into consideration when determining how much weight to give the opinion, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source."[16] Any decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[17] In the present case, the ALJ properly weighed the opinion of Dr. Jerold White, who Plaintiff's describes as her "treating physician" and gave specific reasons for the weight given Dr. White's opinion.

In connection with Plaintiff's claim for unemployment insurance benefits, Dr. White provided a medical certificate in which he stated that he treated Plaintiff from August 17, 2010, to September 20, 2010, for non-insulin dependent diabetes.[18] Dr. White opined that Plaintiff was unable to work and that her condition was serious enough to necessitate her leaving work as of August 17, 2010.[19] The ALJ gave Dr. White's opinion no weight because it was not based on

---

[15] Soc. Sec. Rul. 96–2P.

[16] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

[17] Soc. Sec. Rul. 96–2P.

[18] R. 245.

[19] *Id.*

longitudinal medical evidence in that Dr. White indicated that Plaintiff had only been under his care for about a month.

Although Plaintiff insists that Dr. White had a twenty-year history of treating her prior to rendering his opinion, Dr. White himself said on the medical certificate that he treated Plaintiff from August 2010 to September 2010. Furthermore, Dr. White was listed as Plaintiff's primary care physician only from 2000 to 2004, according to Plaintiff's medical history from TransSouth Health Care and the Digestive Disease Clinic.[20] All other treatment notes are from various other doctors. Therefore, the ALJ could properly conclude that Dr. White only treated Plaintiff for a month during the relevant time period. Because Dr. White did not have an ongoing treating relationship with Plaintiff during the period at issue and at the time he rendered his opinion, the ALJ could not consider Dr. White as a treating physician under the regulations.[21]

In addition to considering Dr. White's limited treatment of Plaintiff, the ALJ gave the opinion no weight because the opinion did not take into consideration the improvements that resulted after Plaintiff's diabetes was stabilized with medication. Dr. White diagnosed diabetes and peripheral neuropathy in August 2010. Treatment notes dated August 2011 to March 2012 show that Plaintiff did not have a glucometer and was not checking her blood sugar. After receiving a glucometer and prescription for Glimepiride, Plaintiff's diabetes was deemed controlled, and she reported no side effects from her medication.[22] Plaintiff's physical

---

[20] R. 220-43.

[21] *See* 20 C.F.R. § 404.1502 (defining a treating physician as one with an ongoing treatment relationship with claimant and providing that an ongoing treatment relationship is when the medical evidence establishes that a claimant "see[s], or ha[s] seen the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)").

[22] R. 295- 314.

7

examinations revealed no musculoskeletal symptoms, normal sensation and motor, normal range of motion of all her joints, no rashes, and no reported complaints of numbness.[23]

Dr. White's opinion is also inconsistent with the findings of Dr. Leonard Hayden. R. 276-279. Based on his examination of Plaintiff, Dr. Hayden opined that Plaintiff has no significant work limitations but must comply with her prescribed medication in order to prevent complications from diabetes.[24] State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.[25] Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[26] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[27] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[28] Opinions from nontreating sources are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the

---

[23] *Id.*

[24] R. 17, 281-284.

[25] *See* 20 C.F.R. § 404.1527(e)(2)(i); Soc. Sec. Rul. 96-6p.

[26] 20 C.F.R. § 404.1502, 404.1527(c)(1).

[27] *Id.* § 404.1502, 404.1527(c)(2).

[28] Soc. Sec. Rul. No. 96–6p.

8

opinion" may be considered in assessing any type of medical opinion.[29] In the present case, the ALJ adequately explained why Dr. Hayden's opinion was credited over that of Dr. White.

The ALJ correctly reasoned that Dr. White's opinion was not based on the longitudinal medical evidence regarding Plaintiff's diabetes for the full alleged period of disability and his opinion did not take into consideration the improvement in Plaintiff's condition with treatment. The evidence showing improvement in Plaintiff's condition with treatment, the opinion of Dr. Hayden after an examination of Plaintiff, and the conclusory and unsupported nature of Dr. White's opinion support the ALJ's decision not to accord any weight to Dr. White's opinion. Accordingly, substantial evidence supports the weight given to the medical evidence and opinions in the record.

Plaintiff maintains that the ALJ should have further developed the record by re-contacting Dr. White to resolve any inconsistencies. Although an ALJ has an obligation to develop a full and fair record, the ALJ is not required to act as the claimant's counsel or produce evidence for the claimant.[30] Whether to re-contact a medical source is within the ALJ's discretion.[31] Here, the record contains treatment records from Dr. White, East Jackson Family Medical Center, Medical Specialty Clinic, TransSouth Health Care, Digestive Disease Clinic, consultative examinations and functional capacity opinions from Dr. Spring and Dr. Hayden, and the opinions of Horace Edwards, Ph.D., and Thomas Neilson, Psy.D. Thus, the ALJ properly

---

[29] 20 C.F.R. § 404.1527(c).

[30] See *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. Jan. 31, 2003) ("Only under special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record.").

[31] 20 C.F.R. § 404.1520b(c)(1) (stating that an ALJ "may recontact [a claimant's] treating physician, psychologist, or other medical source").

used his discretion in determining that the record had sufficient evidence for him to make an informed decision concerning the weight to give Dr. White's opinion.

Credibility Assessment

A claimant's credibility comes into question when her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence."[32] "To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[33] This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."[34] However, the ALJ's credibility finding "must find support in the record."[35]

Here, the Court finds no error in the ALJ's credibility determination because Plaintiff did not provide objective medical evidence to establish the intensity and persistence of her alleged symptoms, and the record as a whole does not indicate that her condition was of disabling severity. Although Plaintiff presented objective medical evidence of an underlying medical condition (diabetes and peripheral neuropathy) and the ALJ found that these impairment could reasonably cause the kind of limitations as alleged by Plaintiff, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effect of her alleged symptoms were not

---

[32] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[33] *Id.*

[34] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

[35] *Id.*

entirely credible because they were inconsistent with the evidence of record. Medication therapy and proper monitoring generally controlled Plaintiff's diabetes, and, despite the diagnosis of peripheral neuropathy, physical examinations revealed no sensory abnormalities or dysfunction and no musculoskeletal or neurological deficits.[36]

Dr. Hayden's clinical findings during his March 2011 physical consultative examination support the credibility determination. As the ALJ discussed, Plaintiff had satisfactory range of motion of her feet and toes, only demonstrated "a bit" of stiffness in her right ankle, could flex and extend her fingers fully at all joints, could squat to forty per cent, balance on each foot separately, and could straightaway walk without difficulty.[37] Dr. Hayden opined that Plaintiff could occasionally lift and carry up to fifty pounds, sit for one hour, stand for three hours, and walk for four hours, all during an eight-hour day.[38] Dr. Hayden also indicated that Plaintiff could frequently reach overhead and use her feet with additional postural and environmental limitations.[39]

With respect to Plaintiff's allegation of disabling mental limitations, Plaintiff has never required mental health treatment from a specialist or a mental health facility. Although consultative psychologist Dr. Richard Spring diagnosed an adjustment disorder with mixed anxiety and depressed mood, Plaintiff's mental status was essentially unremarkable during the February 2011 evaluation.[40] Plaintiff had a therapeutic response to the use of psychotropic

---

[36] R. 246, 297, 300-13.

[37] R. 278-279.

[38] R. 280-284.

[39] *Id.*

[40] R. 254-56.

medication. Dr. Spring opined that Plaintiff has the ability to understand, remember, and carry out ordinary instructions, has no significant cognitive impairments, has the ability to work with others appropriately, and has no significant limitations in terms of her daily activities.[41] The ALJ accorded great weight to Dr. Spring's opinion as it was consistent with Plaintiff's treatment history, Dr. Spring's clinical findings, and the lack of significant effects on Plaintiff's functional abilities. This evidence supports a finding that that her allegations of disabling mental limitations were not entirely credible.

The state agency psychological consultants' reports from Horace Edwards, Ph.D., and Thomas Neilson, Psy.D, also support the ALJ's credibility and residual functional capacity finding. Based on their review of the evidence, they opined that Plaintiff has mild limitations in activities of daily living and social functioning with moderate difficulties in concentration, persistence, and pace.[42]

Finally, Plaintiff's daily activities were not consistent with her allegedly disabling symptoms. Plaintiff attended to her personal needs, cooked, did household chores, went shopping, drove, went outside, managed her finances, watched television, did crossword puzzles, and socialized with others.[43] An ALJ may consider a claimant's activities of daily living in assessing the credibility of the claimant's subjective complaints.[44]

Residual Capacity Finding and Hypothetical

---

[41] *Id.*

[42] R. 258-275, 292.

[43] R. 161-163.

[44] *See* 20 C.F.R. § 404.1529(c)(3)(i).

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[45] The Commissioner may carry this burden by applying the medical-vocational grids[46] which directs a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills.[47] However, if a claimant suffers from a limitation not accounted for by the grids, as in the present case, the Commissioner may use the grids as a framework for her decision but must rely on other evidence to carry her burden. In such a case, the Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy.[48]

Here, the ALJ relied on the testimony of a vocational expert in determining that there were a significant number of jobs in the national economy that Plaintiff could perform.[49] The ALJ's hypothetical question to the vocational expert included all of the limitations that the ALJ found in his assessment of Plaintiff's residual functional capacity. The vocational expert testified that an individual who was limited to the extent found by the ALJ could perform work as: an information clerk, in which there are 16,170 jobs in the State of Tennessee, and 1,000,000 nationally; a routing clerk in which there are 19,760 jobs in the State of Tennessee, and 715,000

---

[45] *Jones*, 336 F.3d at 474.

[46] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[47] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

[48] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537 – 38 (6th Cir. 2001).

[49] R. 42-44.

nationally; and a dispatcher in which there are 18,460 in the State of Tennessee and 2,000,000 nationally.[50]

Plaintiff complains that the hypothetical question did not set out the exact number of hours that each function could be performed. The ALJ found that Plaintiff could perform medium work except that she can only sit, stand, and walk in combination for a total of eight hours in a regular workday and must have a sit/stand option. "Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds."[51] SSR 83-10 notes that "a full range of medium work requires standing or walking, off and on, for a total of approximately six hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds."[52] Thus, the regulations and SSR 83-10 explain the exertional demands associated with the ALJ's finding that Plaintiff could perform medium work.

The ALJ was not required to specifically outline the exact number of hours that Plaintiff could perform each of the exertional demands associated with medium work.[53] The ALJ considered each function, determined that Plaintiff's combined ability to sit, stand, and walk for a total of eight hours, along with her other specified limitations, prevented her from performing the full range of medium work, and then relied on the vocational expert's testimony to find that

---

[50] *Id.*

[51] 20 C.F.R. § 404.1567(c).

[52] SSR 83-10.

[53] *See Delgado v. Comm'r of Soc. Sec.*, 2002 WL 343402 at **5 (6th Cir. Mar. 4, 2002) (citation omitted) ("Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing.").

Plaintiff could, instead, perform light unskilled jobs.[54] This testimony provides substantial evidence to support the ALJ's finding that Plaintiff could perform other work and is not disabled.[55]

Because substantial evidence supports the ALJ's determination that Plaintiff was not disabled, the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: May 8, 2017.

---

[54] "If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

[55] *Foster v. Halter*, 279 F.3d 348, 356-57 (6th Cir. 2001) (finding that substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question).